UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLMOUND-CHRISTIE CORP., A CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CA/SCC 5850 LS JV, LLC, A LIMITED LIABILITY COMPANY, et al.,<br><br>Defendants. | Case No. 23-cv-05192-KAW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 56 |

On October 11, 2023, Plaintiff Shellmound-Christie Corp. filed the instant case against Defendants CA/SCC 5850 ("CA 5850) and CA-Ventures Holdings, LLC ("CA-Ventures"), asserting a single claim for breach of contract. (Compl., Dkt. No. 1.) Pending before the Court is Plaintiff's motion for default judgment. (Mot. for Default J., Dkt. No. 56.)

The Court held a hearing on August 7, 2025, at which Defendants did not appear. Having considered Plaintiff's filings and the relevant legal authority, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for default judgment.[1]

**I.   BACKGROUND**

On June 7, 2021, Plaintiff and Defendant CA 5850 entered into a written purchase sale agreement whereby Defendant CA 5850 would purchase commercial property located at 5850 Shellmound Way ("Subject Property"). (Compl. ¶ 7.) On December 14, 2022, Defendant CA 5850 elected to terminate the sale agreement. (Compl. ¶ 8.) On January 13, 2023, Plaintiff and Defendants entered into a written "standstill" agreement. (Compl. ¶¶ 8, 11.) In exchange for

---

[1] All parties have consented to magistrate judge jurisdiction. (*See* Dkt. Nos. 6, 16.)

1    Plaintiff allowing Defendant CA 5850 to continue to attempt to obtain the rights necessary to

2    proceed with its planned development of the Subject Property, Defendant CA 5850 agreed to pay

3    Plaintiff all outstanding monthly option payments owned as part of the purchase sale agreement,

4    as well as a $250,000 "Break Up Fee." (Compl. ¶ 8.) Defendant CA 5850 also acknowledged and

5    agreed that it owed Plaintiff $649,999.97. (Compl. ¶ 8.) To satisfy this obligation, the parties

6    agreed to release to Plaintiff the $400,000, plus interest, that was being held in escrow. (Compl. ¶

7    9.) The remaining balance was due on or before February 28, 2023; any amount outstanding after

8    that date would accrue interest at the rate of 9% per annum. (Compl. ¶ 9.) The January 13, 2023

9    agreement also included an attorney's fees provision providing for reasonable attorney's fees and

10   costs to a prevailing party should legal action be required to enforce the agreement. (Compl. ¶

11   10.) Defendant CA-Ventures was also a signatory to the January 13, 2023 agreement, whereby it

12   guaranteed payment on behalf of Defendant CA 5850. (Compl. ¶ 11.)

13       As required by the January 13, 2023 agreement, the escrow amount was released to

14   Plaintiff. (Compl. ¶ 14.) The remaining amount due, however, was not paid by February 28,

15   2023. (Compl. ¶¶ 14-15.) On June 23, 2023, the parties entered into another agreement, in which

16   Plaintiff agreed not to immediately file a lawsuit in exchange for full payment of the outstanding

17   balance by July 15, 2023. (Compl. ¶ 16.) As part of the agreement, Defendants acknowledged

18   that as of June 19, 2023, the outstanding balance was $303,259.32, plus $7,464.50 in attorney's

19   fees, for a total amount due of $310,723.82.[2] (Compl. ¶ 16.) Defendants further agreed the

20   outstanding balance would continue to accrue interest until paid in full, and that Defendants would

21   owe an additional $50,000 late-payment fee if Defendants did not pay in full by July 15, 2023.

22   (Compl. ¶¶ 16-17.)

23       Defendants did not make any payments by July 15, 2023. (Compl. ¶ 19.) On October 11,

24   2023, Plaintiff brought this action against Defendants, asserting a single cause of action for breach

25   of contract. On January 23, 2024, Defendants filed their answers. (Dkt. Nos. 8-9.) At the time,

26   Defendants were represented by Attorney Andrew C. Harris. (*Id.*)

---

[2] The complaint and June 23, 2023 agreement state $310,72**4**.82, but $303,259.32 + $7,464.50 = $310,72**3**.82.

2

1  On August 19, 2024, Attorney Harris moved to withdraw as counsel for Defendant. (Dkt. No. 27.) On November 1, 2024, the Court granted Attorney Harris's motion to withdraw as counsel. (Dkt. No. 36.) The Court warned that because Defendants were LLCs, they were unable to appear in federal court except by counsel. (*Id.* at 3.) Defendants did not obtain counsel, and on April 17, 2025, the Court granted Plaintiff's motion to strike Defendants' answers. (Dkt. No. 53.) The Court also directed the Clerk of the Court to enter default as to Defendants because Defendants could not defend themselves in the case without counsel. (*Id.* at 2.) On April 18, 2025, the Clerk of the Court entered default as to both Defendants. (Dkt. No. 54.) Attorney Harris's firm served the entry of default on Defendants, but did not receive any response or communications from Defendants. (Dkt. No. 60.)

On June 16, 2025, Plaintiff filed the instant motion for default judgment. Plaintiff also served the motion for default on Defendants. (Mot. for Default J. at 7.) To date, Defendants have not filed an opposition to Plaintiff's motion for default judgment.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Id.* at 999 (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. See *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the Eitel factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In this analysis, "the

3

well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

### III. DISCUSSION

#### A. Jurisdiction and Service of Process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

##### i. Subject Matter Jurisdiction

The Court has subject matter jurisdiction over this complaint pursuant to 28 U.S.C. § 1332, as there is complete diversity among the parties. Specifically, Plaintiff is a California corporation. (Compl. ¶ 1.) In turn, Defendant CA 5850 is an LLC organized in and with its principal place of business in Delaware, while Defendant CA-Ventures is a LLC organized in and with its principal place of business in Illinois. (Compl. ¶¶ 2-3.) The amount in controversy is also well over $75,000. (Compl. ¶ 19 (asserting damages of at least $362,723.02).)

##### ii. Personal Jurisdiction and Venue

The Court finds that personal jurisdiction is satisfied. "Under general contract principles, a forum selection clause may give rise to waiver of objections to personal jurisdiction, provided that the defendant agrees to be so bound." *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007). Here, the June 19, 2023 agreement specifically states that Defendants agree "that the exclusive jurisdiction and venue of any action relating to the Agreement . . . will exclusively lie in the U.S. Federal Court located in the City and County of San Francisco." (Wilson Decl., Exh. A, Dkt. No. 56-1 at 17.) Defendants signed the June 19, 2023 agreement. (*Id.* at 19.) Thus, per the June 19, 2023 agreement at issue in this case, the Court has personal jurisdiction over Defendants and venue is proper.

##### iii. Service of Process

4

1   There is no dispute that Defendants were served with the complaint, and that both
2   Defendants filed answers.  (*See* Dkt. Nos. 8-9, 12.)  After Defendants' counsel withdrew and
3   Defendants failed to obtain new counsel, Defendants' answers were stricken and default was
4   entered.  (*See* Dkt. Nos. 53-54.)

### B. Application to the Case at Bar

Since the Court has jurisdiction in this matter, this Court must turn to the *Eitel* factors to determine whether the entering of a default judgment is appropriate in this matter.

#### i. Prejudice to Plaintiff

The Court finds that Plaintiff will suffer prejudice if default judgment is not entered.  If default judgment is not entered, Plaintiff will have no recourse to obtain the unpaid balances owed under the agreements it entered into with Defendants.  *See Fudy Printing Co. v. Aliphcom, Inc.*, Case No. 17-cv-3863-JSC, 2019 U.S. Dist. LEXIS 86791, at *7 (N.D. Cal. Mar. 7, 2019).

#### ii. Merits of Plaintiff's Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors focus on the merits of Plaintiff's substantive claim and the sufficiency of the Complaint.  *Eitel*, 782 F.2d at 1471–72.  A party seeking default judgment must state a valid claim upon which it may recover.  *Walters v. Statewide Concrete Barrier, Inc.*, 2005 U.S. Dist. LEXIS 49433, at *8 (N.D. Cal. Sept. 2, 2005).

Here, Plaintiff brings a single cause of action for breach of contract.  To prevail on a breach of contract claim, Plaintiff must establish: (1) the existence of the contract, (2) Plaintiff's performance or excuse for nonperformance, (3) Defendants' breach, and (4) the resulting damages to Plaintiff.  *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  As laid out in the complaint, on January 13, 2023, the parties entered into a "standstill" agreement in which Defendants agreed to pay the amounts due and a $250,000 break up fee, for a total of $649,999.97.  (Compl. ¶ 8.)  In exchange, Plaintiff permitted Defendant CA 5850 to continue its efforts to obtain the necessary rights to proceed with its planned development of the Subject Property.  (Compl. ¶ 8.)  Defendants did not pay the full amount, resulting in the June 23, 2023 agreement in which Plaintiff agreed not to immediately file a lawsuit for breach of contract in exchange for Defendants' full payment of the outstanding balance by July 15, 2023.  (Compl. ¶ 16.)  In that

5

agreement, Defendants acknowledged that the outstanding balance was $303,259.32, plus $7,464.50 in attorney's fees, for a total of $310,723.82. (Compl. ¶ 16; *see also* Wilson Decl., Exh. A, Dkt. No. 56-1 at 17.) Although Plaintiff performed by not filing suit, Defendants failed to pay by July 15, 2023, incurring an additional $50,000 late fee. (Compl. ¶¶ 17, 19.) Plaintiff continues to suffer damages, as Defendants have still not paid. Thus, the Court finds that Plaintiff has sufficiently stated a claim for breach of contract.

### iii. Sum of Money at Stake

The fourth *Eitel* factor assesses the reasonableness of the potential award if a default judgment is entered. In making this assessment, the Court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct. *Eitel*, 782 F.2d at 1471. If the sum of money at issue is reasonably proportionate to the harm caused by Defendant's actions, properly documented, and contractually justified, then default judgment is warranted. *Bd. of Trs. of Cal. Metal Trades v. Pitchometer Propeller*, 1997 WL 797922, at *2 (N.D. Cal. Dec. 15, 1997). A default judgment is only disfavored when a large amount of money is involved or is unreasonable in light of Defendant's actions. *Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). In determining if the amount at stake is reasonable, the Court may consider a plaintiff's declarations, calculations, and other documentation of damages. *Id*.

Here, Plaintiff seeks $362,723.02, as well as interest and attorney's fees and costs. (Mot. for Default J. at 5.) After some minor adjustments as discussed below, the Court concludes that the amount is reasonable because it is based on the contractual terms of the Agreements at issue, which Defendants agreed to and under which Defendants are now liable. Accordingly, this factor weighs in favor of default judgment.

### iv. The Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor considers the possibility of dispute as to any material facts of the case. The contracts (which acknowledge the amounts due) have been provided and were signed by Defendants. (*See* Wilson Decl., Exh. A, Dkt. No. 56-1 at 11-14 (Jan. 13, 2023 Agreement), 16-19 (June 23, 2023 Agreement).) Further, although Defendants originally participated in the action, they made no serious attempt to contest Plaintiffs' factual allegations in the form of any motion.

6

1   Rather, they ultimately stopped communicating with their own counsel, resulting in the
2   withdrawal of counsel, the striking of Defendants' answers, and the entry of default against both
3   Defendants.  Under such circumstances, the possibility of Defendants raising a dispute regarding
4   their liability for damages is unlikely.

   Thus, this factor weighs in favor of default judgment.

###                v.    **Whether Default was a Result of Excusable Neglect**

The sixth *Eitel* factor contemplates the possibility that Defendant's default was the result of excusable neglect.  Under this analysis, the Court considers whether Defendant was put on adequate notice to apprise it of the pendency of the action brought against it.  *Phillip Morris USA, Inc. v. Castworld Prod., Inc.,* 219 F.R.D. 494, 500 (C.D. Cal. 2003).  In addition, the Court also considers whether the circumstances surrounding Defendant's failure to answer the complaint are sufficient to excuse or justify its default.  *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default cannot be attributed to excusable neglect where defendants were properly served with the complaint, the notice of entry of default, and the papers in support thereof).

Here, Defendants were not only served with the complaint, but obtained counsel in order to file answers and participate in this litigation.  Thus, there can be no dispute that Defendants were aware of the litigation, and that Defendants' failure to oppose the instant motion is not based on excusable neglect.

###                vi.   **Federal Rules Preference for a Decision on the Merits**

After an examination of these facts in the aggregate, this Court finds that *Eitel* factors one through six outweigh the Federal Rules of Civil Procedure's preference for a decision on the merits. The Court therefore recommends that default judgment be granted.

##                        IV.    DAMAGES

After entry of default, well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v.*

*Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18).

### A. Outstanding Balance and Interest

Plaintiff seeks $362,723.02, the amount purportedly owed as of July 15, 2023. (Mot. for Default J. at 5; Compl. ¶ 19.) This amount is based on the outstanding balance of $303,259.32 plus attorney's fees of $7,464.50 as of June 19, 2023, plus interest at a rate of 9% per annum and an additional $50,000 late-payment fee. (Compl. ¶¶ 9, 16-17, 19.)

As previously noted, the complaint incorrectly states that the amount due on June 19, 2023 was $310,724.82, as it should be $310,723.82. Based on the Court's calculations, the amount purportedly owed as of July 15, 2023 would be **$362,715.86**. This was calculated as follows:

| June 23, 2023 Outstanding Balance: | $303,256 + $7,464.50 | $310,723.82 |
|---|---|---|
| 9% Annual Interest: | $310,723.82 x .09 | $27,965.14 |
| Daily Interest: | $27,965.14/365 Days | $76.62 |
| Interest Due between June 19, 2023 and July 15, 2023: | $76.62 x 26 Days | $1,992.04 |
| July 15, 2023 Outstanding Balance | $310,723.82 outstanding balance + $1,992.04 interest + $50,000 late-payment fee | $362,715.86 |

The Court finds Plaintiff is entitled to **$362,715.86.** In addition, the Court finds that Plaintiff is entitled to interest on this amount at the rate of 9% per annum since July 15, 2023, as stated in the June 19, 2023 agreement. (*See* Wilson Decl., Exh. A, Dkt. No. 56-1 at 17.)

### B. Attorney's Fees and Costs

Plaintiff seeks $29,935.00 in attorney's fees. (*See* Dkt. No. 59 at 9.) Per the June 19, 2023 agreement, Plaintiff is entitled to "ongoing attorney's fees" in the event that payment in full is not made by July 15, 2023. (Wilson Decl., Exh. A, Dkt. No. 56-1 at 17.)

To determine the appropriate lodestar amount, the reasonableness of the hourly billing rate must be assessed. *Credit Managers Ass'n of S. Cal.,* 25 F.3d at 750. In doing so, the court must look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir.2008). Generally, the relevant community is the forum where the district court sits. *Id.*

Here, Plaintiff seeks hourly rates of $400 for Attorney Richard W. Osman and $325 for Attorneys Corey C. Wilson and Ana Sanderson. (July 7, 2025 Wilson Decl. ¶ 2, Dkt. No. 59-1.) The Court finds that the rates are reasonable. Attorney Osman is the managing partner and has over 30 years of experience and has previously been awarded hourly rates as high as $900. (*See* July 7, 2025 Wilson Decl. ¶ 3, Exh. B.) Attorneys Wilson and Sanderson, in turn, have five years of experience. (*See* July 7, 2025 Wilson Decl., Exhs. C-D.) Courts in this district have awarded similar rates in breach of contract cases. *See Fooksman v. Abramson*, No. 20-cv-07109-TSH, 2021 U.S. Dist. LEXIS 65883, at *31-32 (N.D. Cal. Mar. 11, 2021) (awarding hourly rate of $425 for attorney with six years of experience); *Marshall Wealth Mgmt. Grp. v. Santillo*, No. 18-CV-03510-LHK, 2019 U.S. Dist. LEXIS 569, at *29 (N.D. Cal. Jan. 2, 2019) (awarding hourly rate of $355 with over five years of experience).

Additionally, the Court has reviewed the billing records and finds that they are reasonable. (*See* July 7, 2025 Wilson Decl. ¶ 7, Exh. E.) Accordingly, the Court finds Plaintiff is entitled to **$29,935.00** in attorney's fees.

Finally, Plaintiff seeks $1,238.11 in costs, which are comprised of the filing fee, service costs, copying costs, and online research. Such costs are recoverable. *See Pension Plan for Pension Tr. Fund for Operating Eng'rs v. J&K Sweeping*, No. 14-cv-01179-JCS, 2014 U.S. Dist. LEXIS 129691, at *22 (N.D. Cal. Aug. 22, 2014) ("With respect to Plaintiffs' request for costs for messenger service, legal research, and investigation, such costs are available on the basis that they are generally billed as attorney's fees."). Thus, Plaintiff is entitled to **$1,238.11** in costs.

The Court notes that in the conclusion of the motion for default judgment, Plaintiff also seeks post-judgment interest on the attorney's fees and costs from the date of the judgment to the date of payment at a rate of 9% per annum. (Mot. for Default J. at 9.) Plaintiff, however, does not appear to provide any legal basis for this award. Rather, the June 19, 2023 contract provides that Defendants shall pay "the Outstanding Balance Due, plus interest in the amount of 9% per annum[.]" (Wilson Decl., Exh. A, Dkt. No. 56-1 at 17.) Outstanding Balance Due, in turn, is defined as the $303,259.32 outstanding amount and $7,465.50 in attorney's fees. (*Id.* at 16.) It is therefore not apparent that the June 19, 2023 contract provides that Defendants shall pay for

9

interest on the attorney's fees and costs incurred thereafter, including in this litigation.  At the hearing, Plaintiff's counsel confirmed there was no apparent basis in the contract for awarding interest on the attorney's fees and costs incurred in this litigation.

## V.     CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for default judgment.  Judgment is entered against Defendants, who are jointly and severally liable to Plaintiff for the following amounts:

(1) $362,715.86;

(2) Interest on that amount from July 15, 2023 to the date of payment at a rate of 9% per annum;

(3) Attorney's fees in the amount of $29,935.00; and

(4) Costs in the amount of $1,238.11.

IT IS SO ORDERED.

Dated: August 27, 2025

KANDIS A. WESTMORE
United States Magistrate Judge

10